# Josh Bernstein, P.C.
## Civil Rights & Employment Law

Josh Bernstein, P.C.  
447 Broadway, 2nd Fl.  
New York, NY 10013

(Phone) (646) 308-1515  
(Fax)    (718) 679-9517  
jbernstein@jbernsteinpc.com

February 14, 2025

**RE: Discovery Dispute Concerning *Faragher-Ellerth* Privilege Waiver**

The Honorable Paul A. Engelmayer  
United States District Judge  
Southern District of New York  
40 Foley Square, Room 2201  
New York, NY 10007

*S. O'Rear v. Armando Diaz et. al.*, 24-cv-1669

Judge Engelmayer,

      I represent Plaintiff S. O'Rear ("Ms. O'Rear") in the above-captioned matter, and write pursuant to your Honor's Individual Rule 2(C) to request that the Court compel the Corporate Defendants to immediately produce documents wrongfully withheld as privileged that concern the investigation of Plaintiff's internal complaint and any remedial action taken, or to direct the Corporate Defendants to submit such documents to the Court for *in camera* review. The parties met and conferred on 12/17/2024, but were unable to resolve the below issues then, nor in subsequent discussions.

      In hostile work environment matters, an employer can plead a *Faragher-Ellerth* affirmative defense that the employer exercised reasonable care to prevent and correct any discriminatory behavior. *Koumoulis v. Indep. Fin., Mktg. Group*, 295 F.R.D. 28, 40 (E.D.N.Y. 2013) (citation omitted). On February 10, 2025, the Corporate Defendants Answered the Complaint, pleading a *Faragher-Ellerth* affirmative defense: "Additionally, both Omnicom and Merkley exercised reasonable care to prevent and correct promptly any alleged harassing behavior." Answer, Ex. 1, 7th Aff. Defense, P. 13.

      "When an employer puts the reasonableness of an internal investigation at issue by asserting the Faragher/Ellerth defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation." *Koumoulis, supra* at 41. "Defendants cannot have their cake and eat it too. There is virtually no way for any decisionmaker or adversary to assess the veracity of Defendants' defense if the documents and conversations related to both investigations are concealed." *Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 463 (S.D.N.Y. 2019), citing *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003); *see also e.g. Brownell v. Roadway Package Sys., Inc.*, 185 F.R.D. 19, 25 (N.D.N.Y. 1999); *McGrath v. Nassau Cnty. Health Care Corp.*, 204 F.R.D. 240, 245-46 (E.D.N.Y. 2001); *Angelone v. Xerox Corp.*, No. 09-

1

CV-6019, 2011 U.S. Dist. LEXIS 109407, 2011 WL 4473534 at *2 (W.D.N.Y. Sept. 26, 2011); *Bakhit v. Safety Marking Inc.*, No. 3:13CV1049, 2014 U.S. Dist. Lexis 203079 (D.Conn. June 20, 2014).

Plaintiff initially disclosed her rape by Creative Director Armando Diaz on July 25, 2023. Amended Complaint ¶ 35, Ex. 2. On August 31, 2023, Plaintiff filed a formal report of her sexual assault, identifying Diaz as her assailant. Id. ¶ 48. The Corporate Defendants conducted an investigation, and informed Plaintiff on 10/2/2023 that Diaz was resigning. Ex. 3. Discovery has revealed that Diaz tendered his resignation on 9/27/2023, and that the Corporate Defendants accepted his resignation rather than firing him or taking any other disciplinary action. Ex. 4, Transition Agreement. Instead, on 10/4/2023, the Corporate Defendants entered into a contract with Diaz extending his employment to 10/25/23 at a minimum, and a maximum of 11/8/23. Id.

The Corporate Defendants have withheld 37 documents concerning Plaintiff's internal complaint, the investigation thereof, and "Diaz's exit from Merkley" that were drafted before 11/8/23. Privilege Log Entries No. 1-31, 37, 97-98, 104-106. Ex. 5. There is also a 7/26/23 memo to file re: Plaintiff that includes a redacted section that is not identified in the privilege log and must be produced in unredacted form. Plaintiff's need for the referenced documents is at its zenith because the Corporate Defendants have not produced a single document showing what remedial action they ostensibly intended to take before accepting Diaz's resignation, or any documents showing the decision-making process leading to their claimed intended-but-not-undertaken actions.

Many of the documents withheld are communications between Rebecca Green (Lax), Head of HR, and Cara Milligan, General Counsel (not of either of the Corporate Defendants, but a third affiliated entity called DAS Global). "It is well-recognized that in-house counsel may serve both legal and business functions, and courts will scrutinize the nature of their communications before finding that those communications are privileged...Although outside counsel may be more 'independent' and less likely 'to play dual roles', there is nevertheless no presumption that communications with outside counsel are privileged. *Koumoulis, supra* at *38 (citations omitted).

On 9/5/2023, Plaintiff wrote to Rebecca Lax asking her to confirm receipt of her 8/31/2023 incident report, and Ms. Lax responded, in part: "As far as next steps, an investigation needs to be conducted to gather more information. I have reached out to Cara Milligan, DAS Global Deputy General Counsel, the Omnicom/DAS attorney who supports Merkley and other DAS agencies. Cara is responsible for overseeing investigations of this nature, and I will take guidance from her". Ex. 6. It is clear from the contemporaneous communications that Ms. Milligan was overseeing the factual investigation in real time rather than providing legal advice after-the-fact in advance of litigation, and the withheld documents must accordingly be produced. Moreover, no legal privilege can attach to the communications or materials of Ms. Milligan because she was in-house counsel for DAS Global rather than either of the Corporate Defendants, and therefore any communications with anyone other than DAS Global constitutes a disclosure to a third-party, breaking privilege[1].

Other communications in this tranche include outside counsel Maureen McLoughlin – currently serving as lead litigation counsel to the Corporate Defendants –

---

[1] Nor can the Corporate Defendants claim common interest when they deny alter ego liability and claim Omnicom had nothing to do with this matter whatsoever.

2

who is subject to the same waiver. Even leaving aside waiver of privilege, because of the time-period these attorneys became involved, there is a factual question: "Where the text of 'disputed communications shows that their predominant purpose was to provide human resources and thus business advice, not legal advice,' the attorney-client privilege does not protect the document." *Siani v. Nassau Cmty. Coll.*, 222-CV-7077, 024 U.S. Dist. LEXIS 108164 * 6 (E.D.N.Y. June 18, 2024) (citation omitted). This rule is particularly salient here because when Ms. McLoughlin sat in on Plaintiff's 9/6/2023 interview, she described her role to Plaintiff as ensuring the robustness of the factual investigation rather than providing legal advice to the Corporate Defendants to defend against any potential legal claims by Plaintiff: "Yeah, and thank you, uh, Maggie, I know it's weird to have another lawyer, uh, a lawyer on the phone, you don't know me, um but as Rebecca mentioned I've participated in, uh, quite a number of investigations, um, so ***I'm just kind of working with Rebecca uh to make sure that this is handled, um, you know, thoroughly, seriously, discretely***"[2]. *See e.g. Walker v. N.H. Admin., Office of the Courts*, No. 11-cv-421, 2013 WL 672584, 2013 U.S. Dist. Lexis 24506 * 1-2, 5-8 (D.N.H. Feb. 22, 2013) (requiring employer to produce contemporaneous communications about an internal investigation that were made between the human resources manager who conducted the investigation and outside counsel); *Pray v. New York City Ballet Co.*, 96 Civ. 5723, 1998 WL 558796, 1998 U.S. Dist. Lexis 2010 *1-3 (S.D.N.Y. Feb. 13, 1998) (affirming that plaintiffs could depose outside counsel whose role, as described by the Magistrate Judge, had been to supervise an associate who conducted interviews). Moreover, in denying Plaintiff's motion to disqualify Ms. McLoughlin at the inception of discovery with leave to renew at trial, the Court made clear that if the Corporate Defendants eventually raised a *Faragher-Ellerth* defense, a deeper factual assessment of McLoughlin's centrality to the investigation and any remedial action would be required. Docket Entry No. 68, P. 26.

There is another large tranche of withheld documents labeled as legal advice regarding Plaintiff's leave and/or short-term disability claim that must likewise be produced. Ex. 5, entry No. 32-42, 46-52. All of Plaintiff's benefit claims were denied despite that she was diagnosed with PTSD, and Plaintiff has strong reason to believe the Corporate Defendants sabotaged her applications and intentionally withheld or delayed communications from the insurance carrier as straightforward retaliation and/or to put financial pressure on her. As such, how the Corporate Defendants behaved in regard to Plaintiff's benefits applications is directly relevant to the remedial action – or the opposite of remedial! – they took.

Finally, there are several documents that no attorney was a party to, or that involve communications between large swaths of non-lawyers and/or dual-role in-house counsel that must be reviewed *in camera*. Ex. 5, Entry No. 59, 87, 96; 55-58, 71.

Thank you for your attention to this matter.

Very truly yours,

/s/
Joshua Alexander Bernstein

---

[2] Available at: https://www.dropbox.com/scl/fi/zynvil0yf5q50wceiogid/Exhibit-3.MOV?rlkey=dxqdtfcazcqth7fclrrk66a6x&dl=0, beginning at minute 16 of the recording.

Corporate defendants' reply is due February 20, 2025.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

February 18, 2025
New York, New York