UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

S. O'REAR,

                                   Plaintiff,

                    -v-

 ARMANDO DIAZ *et al.*,

                                   Defendants.

24 Civ. 1669 (PAE)

<u>OPINION AND ORDER</u>

PAUL A. ENGELMAYER, District Judge:

This case is less than two weeks away from the close of fact discovery.  Plaintiff

S. O'Rear has recently moved for leave to file a second amended complaint, Dkt. 125 ("Pl.

Mem."), which would drop O'Rear's sole federal-law claim from the operative Amended

Complaint, Dkt. 40 ("AC").  O'Rear seeks to drop that claim under the mistaken belief that

doing so would divest this Court of subject matter jurisdiction, requiring the case's dismissal, in

favor of a state-court case that O'Rear would then initiate.  Pl. Mem. at 1.

For the reasons that follow, the Court denies O'Rear's motion.

## I.      Background

### A.      Case History Preceding the Pending Motion

The following is a short summary of this case.  A fuller history is set out in the Court's

prior decisions, referenced herein.

On March 5, 2024, O'Rear filed the initial Complaint.  Dkt. 1.  It centrally alleged that,

after an offsite holiday happy hour in December 2022, defendant Armando Diaz, the creative

director at defendant Merkley + Partners Inc. ("Merkley"), an advertising firm, had sexually

assaulted and raped O'Rear.  It alleged that Merkley and its parent company, defendant

Omnicom Group Inc. ("Omnicom," and collectively, "corporate defendants"), are legally liable for that assault.  *Id.*  Although the case is centered on the alleged assault and rape, as to which O'Rear's claims against the corporate defendants and Diaz are brought solely under state law, O'Rear also brings claims of workplace sexual harassment, based on other alleged misconduct. These claims are brought against all defendants, under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(a) *et seq.* ("NYCHRL"), and against the corporate defendants, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  The Title VII claim against the corporate defendants is the only federal claim in the case.  It supplies the sole basis for federal jurisdiction.

On April 5, 2024, the corporate defendants moved to dismiss what was then the one state-law claim against them based on Diaz's alleged assault and rape of O'Rear.  Dkts. 32–34.  On April 9, 2024, the Court directed O'Rear to file any amended complaint or opposition to the motion by April 26, 2025.  Dkt. 36.  On April 25, 2024, O'Rear filed the AC, which added, as to the corporate defendants, two state-law claims based on the assault and rape.  Dkt. 40.  On July 31, 2024, the corporate defendants again moved to dismiss, this time challenging all three claims against them based on Diaz's alleged assault and rape.  Dkts. 54–56.  They again did not move to dismiss the sexual harassment claims.  *Id.*  On August 1, 2024, Diaz prematurely moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  Dkts. 58–60.  The Court, per Diaz's request, *see* Dkt. 63, treated his motion as an untimely motion to dismiss, *see* Dkt. 66, and granted O'Rear an additional opportunity to amend the AC, for the purpose of responding to Diaz's motion, Dkt. 66.  O'Rear did not further amend the AC.  On October 10 and 14, 2024, respectively, O'Rear opposed the motions to dismiss filed by Diaz, Dkts. 78–79,

and the corporate defendants, Dkts. 83–84.  On October 28 and 29, 2024, the corporate

defendants and Diaz, respectively, replied.  Dkts. 89–90, 96.

On January 23, 2025, the Court granted the corporate defendants' motion to dismiss the

three claims against them arising from Diaz's alleged rape and assault, and denied Diaz's motion

to dismiss in its entirety.  *See O'Rear v. Diaz*, No. 24 Civ. 1669 (PAE), 2025 WL 283169

(S.D.N.Y. Jan. 23, 2025).  The decision thus left, as against the corporate defendants, solely the

Title VII and NYCHRL claims of sexual harassment.

As of today, fact discovery has been ongoing for 10 months, since May 7, 2024.  Dkt. 45.

The deadline for fact discovery, which has been extended three times, *see* Dkts. 66–67, 81–82,

109, 113, 117, is Monday, March 24, 2025, Dkt. 117.  The litigation has been contentious.  The

Court has been called upon to resolve numerous motions, including eight filed by O'Rear.  *See*

Dkts. 17, 28, 57, 61, 70, 97, 114, 120.  The Court has issued two extensive decisions.  One

rejected O'Rear's motion to disqualify outside counsel for the corporate defendants.  Dkt. 68.

The other resolved the above-described motions to dismiss.  Dkt. 103.  Of the eight motions filed

by O'Rear, the Court denied four in full, *see* Dkts. 66 (denying procedurally improper motion to

compel and separate meritless motion to stay), 68 (denying motion to disqualify outside

counsel), 119 (denying motion to compel production of "facially privileged" documents); and

denied two in part, *see* Dkts. 77 (compelling production of an insurance policy in unredacted

form and denying production of an irrelevant insurance policy), 102 (compelling production of

complaints made by Merkley employees and denying those by Omnicom's employees).  Another

was mooted by agreement between the parties, *see* Dkts. 120, 127 (resolving motion to compel

depositions).

Most recently, on March 11, 2025, the Court reproved O'Rear's counsel for improperly directing a third-party witness not to answer questions from opposing counsel at a deposition, and for failing to produce counsel's discoverable written communications with the witness. *See* Dkts. 121–22, 129, 133. Although the order resolving this dispute issued after O'Rear filed the instant motion, *see* Dkts. 125, 133, the Court had earlier previewed that outcome, when the parties contacted it during the deposition to raise these issues. The Court voiced skepticism of O'Rear's counsel's claim that his direction to the witness not to answer, and his refusal to produce his communications with the witness, were protected by attorney-client privilege and/or as attorney work product. *See* Dkt. 121 at 2. The Court instead directed O'Rear to produce a privilege log as to the withheld materials and to letter-brief the issues. *See id.* at 2 n.3; *see also* Dkt. 122, Ex. D (privilege log). Upon review of the parties' letters, the privilege log, and the third-party deponent's affidavit, *see* Dkt. 122, Ex. A, the Court granted the corporate defendants' requests for production and directed that O'Rear bear the out-of-pocket costs incurred in connection with the continued deposition, Dkt. 133.

### B.    The Instant Motion

On March 5, 2025, O'Rear moved to amend the AC under Federal Rule of Civil Procedure 15(a)(2). Pl. Mem at 2. Her proposed amendment would drop the Title VII claim against the corporate defendants. *Id.* at 1. In so moving, O'Rear took the position that dropping the sole federal claim would divest the Court of subject matter jurisdiction, thus requiring that the case be dismissed without prejudice, after which O'Rear could renew her state-law claims in state court. *Id.* O'Rear principally relied on the Supreme Court's recent decision in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025). Pl. Mem at 1. That decision resulted in a plaintiff whose state-court complaint had been removed to federal court to gain remand by

amending to drop all references to the federal statute on which federal jurisdiction (and removal) had been based. *See id.* O'Rear stated that: "Through information learned in discovery, and in light of the Court's decision on the Corporate Defendants' motion to dismiss . . . and on Plaintiff's motion to compel production of documents . . . Plaintiff no longer believes her Title VII claim is viable, and anticipates that it will be dismissed on summary judg[]ment." *Id*.

By letters dated March 10, 2025, defendants opposed the motion. *See* Dkts. 130–32. They argued that *Royal Canin* is inapplicable, as it involved a plaintiff "who *immediately* amend[ed] her complaint to drop federal claims that enabled removal to federal court," whereas O'Rear's motion had been made long after the deadline for amendment, and "in the wake of multiple unsuccessful motions, with other motions pending, with the entirety of Plaintiff's witnesses yet-to-be-deposed, and just two weeks away from the close of fact discovery, strongly suggesting an intention to delay and/or forum shop." Dkt. 130 at 2–3 (emphasis in original); *see also* Dkt. 132 at 1 ("Most importantly, unlike in *Royal Canin*, Plaintiff chose a federal forum and has used this Court's time and resources for the past year to aggressively litigate her claims."). Defendants argued that, given O'Rear's "11th hour procedural maneuver," O'Rear was "unabashedly judge and forum shopping, and, if successful, . . . [d]efendants will suffer substantial undue prejudice in having to start over in state court[.]" Dkt. 132 at 1. Defendants further argued that O'Rear had not shown good cause for an out-of-time amendment of her pleadings. Dkts. 130 at 1–2; 132 at 2.

## II.    Discussion

O'Rear argues that, under *Royal Canin*, she is entitled to amend the AC to remove her sole federal claim. Pl. Mem. at 1. She further argues that under *Royal Canin*, were she to do so, such would strip the Court of subject matter jurisdiction, requiring dismissal without prejudice of

her state-law claims, and enabling her to refile her state-law claims in state court, where "they are bound to end up anyway." *Id.*

O'Rear's reading of *Royal Canin* is mistaken. Contrary to her premise, *Royal Canin* does not provide a charter for a plaintiff to amend a complaint long after the deadline to do so has passed, let alone to do so as a means to avoid a forum choice which, in light of a series of adverse rulings, the plaintiff has now apparently come to rue.

In *Royal Canin*, the plaintiff filed suit in Missouri state court, bringing state-law claims that embedded, in part, a federal question. *See* 604 U.S. at 28 & n.1 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Defendants, acting pursuant to 28 U.S.C. § 1441(a), timely removed the case to federal court, invoking federal-question jurisdiction, and, as to the intertwined state-law claims, supplemental jurisdiction. *Id.* at 28–29. In response, the plaintiff first moved to remand—which the district court granted but the Eighth Circuit vacated. *Id.* at 28 n.1. The plaintiff then amended her complaint, withdrawing any mention of the federal statute, and moved for remand to state court. *Id.* at 28–29. The district court denied that motion, concluding that federal-question jurisdiction remained based on the original pleadings. *Id.* at 29. But the Eighth Circuit and the Supreme Court held otherwise. *Id.* at 29–30. The Supreme Court held that once a "plaintiff eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves. With the loss of federal-question jurisdiction, the court loses as well its supplemental jurisdiction over the state claims." *Id.* at 49–50; *see also id.* at 48 n.1 ("referring to the original complaint's FDCA allegations simply as federal claims" "for ease of exposition"). Accordingly, it held, because the plaintiff had timely dropped her federal-law claims after removal, the district court lacked jurisdiction over the remaining state-law claims, and remand to state court was appropriate. *Id.* at 55.

*Royal Canin* is easily distinguished from this case.  Decisive here, the action by the plaintiff in *Royal Canin* to amend her complaint to drop all references to the federal statute that supplied subject matter jurisdiction occurred within the time period for amendment.[1]  *See id.* at 48 n.1 (discussing "earlier jurisdictional battle," where Eighth Circuit held that the complaint's references to federal statutory provisions were integral to plaintiff's state-law claims, thus providing for federal jurisdiction).  There, after defendants "quickly removed [the case] to federal court," *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 920 (8th Cir. 2023), *cert. granted*, 144 S. Ct. 1455 (2024), *and aff'd*, 604 U.S. 22 (2025), the plaintiff, within 30 days, moved for remand, *see Wullschleger v. Royal Canin U.S.A., Inc.*, 19 Civ. 235 (W.D. Mo.), Dkts. 5, 26.  Thereafter—once a stay of district court proceedings to enable appellate review had lifted—the *Royal Canin* plaintiff promptly amended her complaint, some 23 days after the Supreme Court first denied certiorari.  *See Wullschleger*, 19 Civ. 235, Dkts. 41, 43.  It was undisputed that the plaintiff in *Royal Canin* had acted diligently and within the time period to amend.

The same is not so here—or anywhere close.  Nearly 11 months ago, on April 25, 2024, O'Rear amended her complaint, Dkt. 40, one day before the deadline the Court had set to do so.  *See* Dkt. 36 (order giving O'Rear until April 26, 2024 to amend in response to the corporate defendants' partial motion to dismiss or to answer).  On May 7, 2024, after an initial conference, the Court issued a case management plan that gave the parties 30 days to file amended pleadings.

---

[1] *Royal Canin* is also factually distinguishable on the grounds that, unlike the plaintiff there, who filed only state-law claims in state court and found herself in federal court via removal, O'Rear filed suit in federal court based on a federal claim.  O'Rear thus chose this forum.  Because the untimeliness of O'Rear's proposed amendment separately defeats her present application for remand, there is no occasion to determine whether O'Rear's choice of a federal forum would also defeat that bid.

Dkt. 45.  O'Rear again did not do so.  Nor did she do so after the Court, in an order issued

August 16, 2024 in response to Diaz's untimely motion to dismiss, gave O'Rear a new

opportunity, until September 6, 2024, to amend.  *See* Dkt. 66 at 4 (stating that the deadline for a

Second Amended Complaint "will not be further extended").  Since then, as reviewed, the parties

have litigated numerous motions and today are at the brink of completing fact discovery.  And,

as the circumstances make apparent, and as O'Rear effectively admits, her proposal now to

dismiss her federal claim to enable an attempted escape from federal court is motivated in part by

the Court's decisions adverse to her, including those (1) granting the corporate defendants'

motion to dismiss the claims against them arising from Diaz's alleged assault and rape, Dkt. 103,

and (2) denying, on grounds of privilege, O'Rear's motion to compel certain discovery from

those defendants, Dkt. 119.  *See* Pl. Mem. at 1 (citing those adverse rulings).

       Nothing in *Royal Canin* can be read to authorize O'Rear's present maneuver, which is

antithetical to the standards governing amendment set by the Federal Rules of Civil Procedure.

Although a court, under Rule 15(a), should "freely" give leave for a party to amend its complaint

"when justice so requires," it is to deny such a motion if there is "evidence of undue delay, bad

faith, undue prejudice to the non-movant, or futility."  *Milanese v. Rust-Oleum Corp.*, 244 F.3d

104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  And where, as here,

"a scheduling order governs amendments to the complaint, the lenient standard under Federal

Rule of Civil Procedure Rule 15(a) must be balanced against the requirement under Rule 16(b)

that the Court's scheduling order shall not be modified except upon a showing of good cause."

*Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (cleaned up).  "Whether good cause

exists turns on the 'diligence of the moving party.'"  *Id.* at 335 (quoting *Grochowski v. Phoenix

Constr.*, 318 F.3d 80, 86 (2003)).  Where the Court has issued "a scheduling order, any motions

to amend are governed by the stricter standard of Rule 16(b)." *Acosta v. Kennedy Children's Ctr.*, No. 24 Civ. 3358 (PAE), 2025 WL 70141, at *11 (S.D.N.Y. Jan. 10, 2025) (collecting cases).

O'Rear's bid to amend does not satisfy either Rule 15(a) or Rule 16(b). Giving O'Rear leave to amend at this stage, as a precursor for a motion to dismiss this case in favor of the later initiation of a state-court case, would disserve the interests of justice. It would blow up the carefully designed case management plan, including its deadlines governing fact discovery, that the Court put in place at the joint proposal of the parties. *See* Dkts. 45, 67, 82, 117. It would reward brazen forum-shopping. And halting this case with days to go in fact discovery in favor of an eventually filed state-court lawsuit would cause disruption and delay. Viewed under Rule 15(a), O'Rear's motion for leave to amend is readily denied on the grounds*, inter alia*, of undue delay and bad faith. And viewed under Rule 16(b), the motion is readily denied for want of good cause. Far from being justified by good cause, O'Rear's gambit to amend now to circumvent the federal forum that she chose and in which this case has long been litigated, and to subvert the present schedule, epitomizes gamesmanship. *See In re Int. Rate Swaps Antitrust Litig.*, No. 16 Misc. 2704 (PAE), 2018 WL 2332069, at *27 (S.D.N.Y. May 23, 2018) (denying leave to amend where "plaintiffs' counsel engaged in unacceptable gamesmanship. . . . [and] kept mum until virtually the last possible minute"); *AEP Energy Servs. Gas Holding Corp. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) ("Amendment may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" (citation omitted)); *see also Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) ("The Court plainly has discretion . . . to deny leave to amend when the motion is made after an

inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant.").

Accordingly, the Court denies O'Rear's motion to amend as improper under Rules 15(a) and 16(b). *See, e.g.*, *Acosta*, 2025 WL 70141, at *11 (denying leave to amend as contrary to the rules); *Outlaw v. City of N.Y.*, No. 22 Civ. 9288 (PAE), 2024 WL 4825955, at *6 (S.D.N.Y. Nov. 19, 2024) (same); *In re Int. Rate Swaps Antitrust Litig.*, 2018 WL 2332069, at *27–28 (same). For avoidance of doubt, all claims that the Court has not previously dismissed, including the Title VII claim against the corporate defendants, remain pending.

After the close of fact discovery, the Court will entertain motions for summary judgment, utilizing the procedures set out in its Individual Practices. *See* Hon. Paul A. Engelmayer, Individual Rules and Practices in Civil Cases, https://nysd.uscourts.gov/hon-paul-engelmayer. Specifically, by two weeks after the close of fact discovery, *i.e.*, by April 7, 2025, any party wishing to move for summary judgment must submit, by letter not to exceed three single-spaced pages, a request that the case management conference scheduled for April 23, 2025 serve as a pre-motion conference, and summarizing its anticipated summary judgment motion(s). Responses to such letter(s) are due one week later, *i.e.*, by April 14, 2025. At the April 23, 2025 conference, the Court will set a prompt schedule for the briefing of summary judgment motions. In the event that defendants express an intention to move for summary judgment on the Title VII claim, it will be for O'Rear to determine whether to defend that claim, or to agree to entry of summary judgment for the corporate defendants with respect to it.

After the resolution of summary judgment motions, if no federal claim survives, the parties may *then* litigate whether the Court should exercise supplemental jurisdiction over such state-law claims as remain. That question, however, will not be governed by *Royal Canin*.

Instead, it will be governed by the familiar standards under federal law guiding the exercise or not of supplemental jurisdiction at this stage.  *See, e.g.*, *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013) (in deciding whether to exercise supplemental jurisdiction, courts consider "the values of judicial economy, convenience, fairness, and comity"); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) ("[T]he district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction[.]" (citing 28 U.S.C. § 1367(c)(3)); *Kurtz v. Lupica*, No. 20 Civ. 3401 (PAE), 2023 WL 3510646, at *1 (S.D.N.Y. Apr. 26, 2023) ("The Court's judgment here is that exercising supplemental jurisdiction over the surviving state-law claim will serve the interests of judicial economy, convenience, and fairness.").

## CONCLUSION

For the above reasons, the Court denies O'Rear's motion for leave to amend the AC.  The Clerk of Court is respectfully directed to terminate the motion pending at Docket 125.


SO ORDERED.

*Paul A. Engelmayer*

_____
Paul A. Engelmayer
United States District Judge


Dated: March 14, 2025
       New York, New York